IT IS SO ORDERED.

Dated:  8 July, 2013 04:18 PM



JESSICA E. PRICE SMITH
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | IN PROCEEDINGS UNDER CHAPTER 7 (INVOLUNTARY) |
| FREEDOM FILLER, LLC, | |
| DEBTOR. | CASE NO. 13-10619 |
| | JUDGE JESSICA E. PRICE SMITH |

### OPINION AND ORDER

The matter before the court is the involuntary Chapter 7 Petition filed on January 30, 2013 against alleged debtor Freedom Filler, LLC ("Debtor") by Roll With It, Ltd. ("RWI"), Roll and Save, LLC ("R&S"), Tobacco 4 Less, LLC ("T4L"), and Village Tobacco, LLC ("Village" and, collectively, RWI, R&S, T4L and Village are "Petitioning Creditors"), pursuant to 11 U.S.C. § 303(b)(1).  On February 28, 2013, Debtor filed an Answer to the Involuntary Petition denying the allegations and requesting dismissal.  For the reasons set forth below, I find that there are four petitioning creditors with unsecured non-contingent claims, that their claims are not subject to a bona fide dispute as to liability or amount, and that they exceed $14,425. Accordingly, an order for relief is entered.

1

## DISCUSSION

An involuntary chapter 7 case can be commenced by the filing,

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1). Whether there is a bona fide dispute depends upon "there [being] either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts[.]" *In re DSC, Ltd.*, 486 F.3d 940, 945 (6th Cir. 2007) (citing and quoting *In re. Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). "[T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist." *In re Soderberg and Schafer CPAS, LLC*, 441 B.R. 262, 264 (Bankr. N.D. Ohio 2010)(internal quotations omitted).

It is undisputed that in April 2011, Debtor, by and through its Managing Member, Richard Yisha, entered into a contract with Cig 10, LLC ("Cig 10"), that gave Cig 10 the "right to solicit and take orders" for roll-your-own ("RYO") cigarette machines manufactured by Debtor. Exhibit 86. Cig 10 negotiated numerous Master Sales & Service Agreements with the Petitioning Creditors for the purchase of RYO machines and Exclusive State Agreements for exclusive rights to operate the machines in a specific area. Exhibits 2-5; 11-16; 49-51; and 75. Based on the testimony and evidence introduced at trial, including the testimony of Mr. Yisha, in which he acknowledges the purchase of machines and payment for exclusive use by each of the Petitioning Creditors and the non-delivery of the machines to them, each of the Petitioning Creditors is the holder of a claim against the Debtor. Further, based on Mr. Yisha's testimony,

the claim of each Petitioning Creditor is at least $14,425 for undelivered RYO machines and exclusive use territories. Finally, the acknowledgment of receipt of the payments pursuant to the contracts without performance by the Debtor, establishes a prima facie case that the claims are not subject to a bona fide dispute. Therefore, the Petitioning Creditors have met their burden of proof under § 303(b)(1).

The burden now shifts to the Debtor to establish that the claims are subject to a bona fide dispute. To meet its burden, the Debtor asserts that notwithstanding the receipt of the payments, the Petitioning Creditors do not have claims against it because: 1) it could not deliver the purchased machines to the Petitioning Creditors due to a change in the law regarding the use of RYO machines; 2) it has no liability for the failure to deliver RYO machines pursuant to the terms of the Master Sales and Service Agreements; and 3) there has been no breach of the agreement to provide the Petitioning Creditors with exclusive use of the RYO machines in the purchased territories. More specifically, the Debtor asserts that Paragraphs 11 and 22 of the Master Sales and Service Agreements, when read together, assign the risks inherent to the Roll Your Own industry before the Highway Transportation Act became law to the Petitioning Creditors, and that the contracts should be enforced according to their terms.

I agree that the contracts should be enforced according to their terms. Further, since the Master Sales and Service Agreements and the Exclusive State Agreements were drafted by the Debtor, any ambiguities in the agreements will be interpreted against them in accordance with Ohio law, as set forth in the agreements. *Monnett v. Monnett*, 46 Ohio St. 30, 34, 17 N.E. 659, 662 (1888). (The long-standing common law rule of contracts is that agreements are to be interpreted as written and that any ambiguous language be read against the drafter of the contract.)

3

Paragraph 11 of the Master Sales and Service Agreement is titled <u>Assumption of Risk</u>. It reads as follows:

> Buyer expressly assumes the risk that developments in the federal state, or local laws may affect Buyer's legal liability in connection with using the Equipment, including the lawsuit known as <u>RYO Machine Rental, LLC. Et al. v. U.S. Dept. of the Treasury, et. al</u> (Case No. 4:10 – CV -2462), pending in the Northern District of Ohio. Buyer represents that it is familiar with current developments in the federal state and local laws and regulations regarding the operation and the possession of the Equipment, and Buyer shall allow the Equipment to be used only in compliance with those laws and regulations.

Master Sales and Service Agreement ¶ 11. Both sentences of this paragraph refer to the use of the RYO machines by the buyer, not the delivery of the machines by the Debtor. The plain reading of paragraph 11 is that the buyer, in this case each of the Petitioning Creditors, assumes the risk that a change in the law will affect its liability in connection with the *use* of the machines. Nothing in Paragraph 11 excuses the Debtor's non-delivery of RYO machines.

At trial, Mr. Yisha testified that the machines could not be used by the Petitioning Creditors in a way that did not violate the law. Presumably, this belief forms the basis for the argument that Section 1302.73 of the Ohio Revised Code excused his performance upon the enactment of the HTC. Ohio Revised Code Section 1302.73 provides, in pertinent part, that non-delivery is not a breach if performance has been made impracticable by the occurrence of a contingency which it was assumed would not occur, or in compliance in good faith with any applicable domestic governmental regulation, provided that the seller notified the buyer seasonably that there will not be a delivery. Ohio Rev. Code Ann. §1302.73. Paragraph 11 of the Master Sales and Service Agreement, contemplated the possible change in the law as was the subject of the lawsuit referenced therein and stated that the Petitioning Creditors would assume the risk of their ability to continue to use the machines consistent with that change. Further, at no time did the Debtor advise the Petitioning Creditors that their deliveries would not be made.

4

Therefore, Section 1302.73 of the Ohio Revised Code does not support the Debtor's assertion that it was no longer required to deliver the RYO machines after the enactment of HTC.

The Debtor's next argument is that the plain language of Paragraph 22 read in connection with Paragraph 11 of the Master Sales and Service Agreement excuses it from all liability associated with not delivering machines because of the change in the law. The paragraph reads in toto: "The Seller shall not be responsible or liable for any delays or failures in delivery." Master Sales and Service Agreement ¶ 22. The plain reading of this paragraph eliminates any responsibility of Debtor to deliver the RYO machines for any reason or no reason at all. Debtor is free to perform at its own will, making its promise to perform under the contract illusory. In Ohio, "a contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect destroys his promise and thus makes it merely illusory." *Century 21 American Landmark, Inc. v. McIntyre*, 68 Ohio App.2d 126, 129-30, 427 N.E.2d 534, 536-37 (1980) (citing 1 Williston on Contracts (3 Ed. 1957) 140, Section 43). An agreement that includes an illusory promise lacks mutuality of obligation, and without that, such an agreement is not valid and enforceable. *Faurecia Automotive Seating, Inc. v. Toledo Tool and Die Co., Inc.*, 579 F.Supp.2d 967, 973 (N.D. Ohio 2008). Accordingly, I find that the Master Sales and Service Agreements are not enforceable contracts.

Where a written contract may fail, a contract implied by law may arise under the appropriate circumstances. *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923, 927 (1938). In this matter, the Petitioning Creditors performed their obligations under the Master Sales and Service Agreements and Exclusive State Agreements by collectively paying Debtor at

least $354,000, based on the Debtor's admissions of funds received. The law does not allow the Debtor to retain the money to its unjust enrichment. *Id.* The common-law remedy of restitution provides a basis for the Petitioning Creditors' claims. Accordingly, the Debtor has failed to demonstrate that the claims are subject to bona fide dispute.

With respect to the Exclusive State Agreements, and paragraph 7 of the Master Sales and Service Agreements, the Debtor also does not prevail on its assertion that it is not in breach because the Petitioning Creditors still have the exclusive use of the areas for which they paid. The exclusive use agreements were premised on the actual delivery and use of machines in the exclusive area by the Petitioning Creditors. The agreement between the parties was the "exclusive right to *own and operate*" the RYO machines. Master Sales and Service Agreement ¶ 7 (emphasis added). Therefore, without delivery of the machines, there was no consideration for the money that was paid, and the Petitioning Creditors have a claim against the Debtor for the amounts paid.

## CONCLUSION

The determinative issue raised by this proceeding is whether the claims asserted by the Petitioning Creditors are "subject to bona fide dispute as to liability or amount" in order to meet the requirements of Section 303(b)(1) of the Bankruptcy Code. For the reasons set forth above, the Court finds that Petitioning Creditors' claims are sufficient in value and are not subject to bona fide dispute, and the order for relief is entered.

**IT IS SO ORDERED.**