| | |
|---|---|
| IN RE:<br><br>FREEDOM FILLER, LLC,<br><br>              Debtor. | Case No.: 13-10619<br><br>Involuntary Chapter 7<br><br>Judge Jessica E. Price Smith |

**TRUSTEE'S MOTION TO (I) APPROVE THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF CLAIMS, LIENS, ENCUMBRANCES, AND OTHER INTERESTS; AND (II) (A) ESTABLISH SALE AND BIDDING PROCEDURES; AND (B) SCHEDULE A SALE APPROVAL HEARING**

Now comes Lauren Helbling, Chapter 7 Trustee for Freedom Filler, LLC (the "Debtor"), pursuant to sections 363, and 365 of title 11, United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and hereby moves for entry of an order authorizing and approving (I) the sale of the Debtor's Assets (the "Assets") to the successful bidder at an auction to be held, free and clear of liens, claims, encumbrances, and interests, including any tax claims, including rights or claims based on any successor or transferee liability; and (II) (A) establishing sale and bidding procedures and (B) scheduling a sale approval hearing.

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On February 1, 2013 (the "Petition Date"), certain creditors filed an involuntary petition against the Debtor in this Court under Section 303(b)(1) of the Bankruptcy Code.

3. Following an evidentiary trial, the Court entered the order for relief on July 8, 2013 (Docket No. 52).

4. By this Motion, the Trustee seeks entry of two related orders. First, the Trustee requests entry of an order (the "Sale Procedures Order") in the form attached hereto as Exhibit A, pursuant to 11 U.S.C. §§ 363 and Fed. R. Bankr. P. 2002 and 6004, (i) authorizing and approving certain proposed procedures to govern the sale process and provide for the submission of any bids for substantially all the Debtor's assets and the form and manner of notice of the hearing to consider authorization and approval of the sale and (ii) setting a hearing to consider the sale some time in or about March, 2014 (the "Sale Hearing"). Second, the Trustee requests entry of an order (the "Sale Order"), in the form attached hereto as Exhibit B, pursuant to 11 U.S.C. §§ 363(b), (f), and (m), and Fed. R. Bankr. P. 6004 and 6006, authorizing and approving the sale of the Debtor's assets to the successful bidder, free and clear of liens, claims, encumbrances, and other interests (the "Sale Transaction").

5. The Trustee is proposing to market the Assets for approximately thirty (30) days, and then have a deadline of March 17, 2014 for bids and then have the auction on March 24, 2014. The Trustee is requesting that the Court then hold a sale hearing shortly after the auction.

6. While the Trustee has not been able to locate a stalking horse bidder for the Assets, the Trustee believes that there may be a market for the Assets such that the effort to conduct the Sale Transaction is worthwhile. It should be noted, however, that if no Qualified Bids are received, then the Trustee shall cancel the proposed Auction and determine whether all such Assets shall be abandoned back to Freedom Filler, which would leave Freedom Filler in a position to do whatever it wants with the Assets.

7. The Debtor's assets to be sold constitute all of the Debtor's business assets, and consist of the following:

- all intellectual property related to Freedom Filler's Roll Your Own Cigarette Machine, and all improvements, modifications, etc. thereof, including but not limited to software, drawings, designs, the patent(s) published with the U.S. Patent and Trademark Office as Publication #21030228187 published on September 5, 2013, designs, trademarks, business names, domain names, state and local registrations, and any and all other intellectual property;

- all work in progress, control panels, circuit boards and other parts and supplies belonging to the Debtor located at Acorn Technology Corporation, 23103 Miles Road, Cleveland, OH 44128;

- all customer lists, customer contacts, and similar business information; and

- all customer contracts and related rights with respect to all Freedom Filler Machines presently operated by Freedom Filler customers

(collectively, the "Assets.")

The Assets do not include any claims by the Debtor and/or the bankruptcy estate against any third parties with respect to recovery actions under §§ 544, 547, 548 and/or 550 of the Bankruptcy Code. It is further noted that the Debtor's license agreements identified in its Bankruptcy Schedules have been rejected and terminated by operation of law.

**PROPOSED SALE PROCEDURES AND NOTICE**

8. The Trustee proposes to sell the Debtor's Assets via an auction following a thirty (30) day marketing period, in accordance with the proposed notice with terms and procedures (collectively, the "Sale Procedures") attached hereto as Exhibit C. As part of those procedures, the Trustee proposes to send the Sale Procedures to (i) all creditors, (ii) all customers of the Debtor, and (iii) all potential buyers identified to the Trustee by the Debtor's principal, Mr. Richard Yisha.

9. The Trustee also proposes, pursuant to Bankruptcy Rule 2003(d) and 2002(1), to publish notice, substantially in the form annexed hereto as Exhibit D (the "Publication Notice"), as soon

3

as practicable after the procedures are approved, by placing a banner ad on the Tobacco Reporter website (www.tobaccoreporter.com) for a period of thirty (30) days. The Trustee is also exploring the cost of placing a similar ad with the Tobacco Journal, assuming that it is not prohibitively expensive to do so (the Trustee has requested information about cost but has not yet received a response). The Trustee requests that the Court conclude that the proposed advertising is appropriate under the circumstances, and that it be deemed proper notice to any other interested parties whose identities are unknown to the Debtor.

## THE SALE PROCEDURES SHOULD BE APPROVED

10. Good and sufficient cause exists to approve the Sale Procedures. The Sale Procedures are in the best interests of the estate and its creditors and other parties because they will enable the Trustee to realize the maximum value from the sale of the Assets. Additionally, the Sale Procedures include appropriate noticing procedures to ensure all parties in interest will receive adequate notice of all relevant information.

11. The expeditious nature of the proposed Sale Procedures is reasonable and justified. The Sale Procedures will provide procedural safeguards and market checks that will enable any potentially qualified interested parties with an opportunity to come forward and make a competitive bid.

12. The Trustee submits that the notice set forth in the Sale Procedures constitutes good and sufficient notice of the Sale Procedures, the Sale Hearing and the Sale Transaction, and that no other or further notice need be given.

13. The notice to be provided via the Sale Notice is reasonably calculated to provide all parties in interest (including parties with contingent claims) with the necessary information concerning the Sale Procedures, the Sale Hearing, and the Sale Transaction. Accordingly, the proposed Notice is appropriate and sufficient under the circumstances.

14. The Sale Notice and the method of service described herein and provided in the Sale Procedures Order, fully comply with Bankruptcy Rule 2002 and constitute good and sufficient notice of the Sale Procedures, the Bid Deadline, the Sale Transaction, the relevant objection deadlines, the Sale Hearing, and all matters related thereto. Accordingly, the Trustee requests that the Court approve the form and manner of the notice substantially in the form of Exhibit C, annexed hereto.

## SALE OF THE ASSETS

15. In accordance with Bankruptcy Rule 6004(f)(1), sales of property rights outside the ordinary course of business may be by private sale or public auction. The Trustee has determined that an auction sale of the Assets in accordance with the proposed Sale Procedures will enable her to obtain the highest and best offer for the Assets, thereby maximizing the value of the estate, and is in the best interests of the Debtor and its creditors and other stakeholders.

16. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In addition, Section 704(a)(1) requires a Chapter 7 trustee to collect and reduce to money the property of the estate.

17. In this case, as the Court is aware, the Debtor ceased operations prior to the bankruptcy filing. However, at the time this case was filed, the Debtor was in the process of re-developing its product – technology for the development of "roll your own" cigarette machines – with the intent to market and sell it outside the United States. The proposed sale will serve to maximize the value of its Assets and fulfill the Trustee's obligation to reduce such Assets to money.

18. While the Trustee has not been able to locate a stalking horse bidder for the Assets, the Trustee believes that there may be a market for the Assets such that the effort to conduct the Sale Transaction is worthwhile.

# THE SALE TRANSACTION MUST BE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, INCLUDING RIGHTS OR CLAIMS BASED ON SUCCESSOR OR TRANSFEREE LIABILITY

19. It is appropriate that the Assets be sold free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code with any such liens, claims, encumbrances, or interests to attach to the net sale proceeds of the Assets. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding. to accept a money satisfaction of such interest.

11 USC § 363(f).

20. To facilitate the sale of the Assets, it is necessary to authorize the sale of the Assets free and clear of any and all liens, claims, encumbrances, or interests, including rights or claims based on any successor or transferee liability, with any such liens, claims, encumbrances, or interests to transfer to and attach to the net proceeds of the sale with the same rights and priorities therein.

21. The liens, claims, encumbrances, and interests held by creditors may be satisfied by at least one of the five conditions set forth in section § 363, and any such liens, claims, encumbrances, and interests will be adequately protected by transfer to and attachment to the net

proceeds of the sale of the Assets, subject to any claims and defenses the Debtor may possess with respect thereto. In this case, there are only two potentially secured creditors: (i) Midway Ventures and (ii) Dick Yisha. According to the Trustee's investigation, Midway Ventures filed a UCC-1 financing statement without any underlying agreement with the Debtor, which purports to extend only to five (5) machines that were never built. Thus, the lien is both invalid and does not attach to any collateral. The Trustee is presently discussing the lien claim with Midway Ventures and in the meantime, Midway Ventures has indicated to the Trustee that it consents to the sale, and its lien (if any) will attach to the proceeds from the proposed sale. The UCC-1 filing by Mr. Yisha, the Debtor's principal, was done to secure an antecedent debt during the insider preference period and so is subject to avoidance. Acknowledging that, Mr. Yisha has filed a proof of claim asserting only an unsecured claim.

22. Thus, the sale of the Assets free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code. Accordingly, the Assets should be transferred to the successful bidder free and clear of all liens, claims, encumbrances, and interests with such liens, claims, encumbrances, and interests to be transferred to and attach to the net sale proceeds of the Purchased Assets.

### A CONSUMER PRIVACY OMBUDSMAN IS NOT NECESSARY

23. Section 363(b)(1) of the Bankruptcy Code provides that if a debtor "in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals [and] such policy is in effect on the date of the commencement of the case," then the debtor "may not sell ... personally identifiable information to any person unless" the sale is "consistent with such policy" or a "consumer privacy ombudsman" is appointed. 11 U.S.C. § 363(b)(1). The term "personally identifiable

7

information" defined in section 101(41A) of the Bankruptcy Code, means private information about a debtor's customers that "if disclosed, will result in contacting or identifying [an] individual physically or electronically" (e.g., name, address, telephone number, social security number, credit card account number, birth date). *Id.* § 101 (41A).

24. Section 332 of the Bankruptcy Code governs the appointment of a consumer privacy ombudsman and provides that the Court "shall order the United States trustee to appoint, not later than 5 days before the commencement of the [sale] hearing, 1 disinterested person to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman." *Id.* § 332(a). The consumer privacy ombudsman "may appear and be heard at [the sale] hearing and shall provide to the [C]ourt information to assist the [C]ourt in its consideration of the facts, circumstances, and conditions of the proposed sale … of personally identifiable information." *Id.* § 332(b).

25. In this case, it appears that the Debtor did not acquire personally identifiable information in conducting its business operations inasmuch as it dealt with business entities. *See*, customer information attached to Schedule B (docket no. 76), at p. 7-8. Accordingly, the Trustee submits that a consumer privacy ombudsman is unnecessary.

## **NOTICE**

26. This Motion is being served upon all parties who have appeared in this action as reflected in the Certificate of Service, below. Further, separate Notice of this Motion is being provided to all creditors who filed proofs of claim in this matter, as reflected in the accompanying Notice (with attached Certificate of Service thereon). As stated above, if the Court approves the proposed procedures pursuant to this Motion, the Trustee will provide further notice of the proposed Auction and Sale Hearing, in substantially the form attached hereto as Exhibit C, to all creditors who filed proofs of claim.

8

7828689_1 121149.0002

13-10619-jps    Doc 94    FILED 01/03/14    ENTERED 01/03/14 17:24:56    Page 8 of 10

WHEREFORE the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Respectfully submitted,

/s/ *Patricia B. Fugée*
Patricia B. Fugée (0070698)
Roetzel & Andress, LPA
One SeaGate, Suite 1700
Toledo, OH 43604
Telephone: 419-254-5261
Facsimile: 419-242-0316
Email: pfugee@ralaw.com
*Counsel for Trustee Lauren A. Helbling*

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of January, 2014, a true and correct copy of the *Trustee's Motion to (I) Approve the Sale of Debtor's Assets Free and Clear of Claims, Liens, Encumbrances, and Other Interests; and (II) (A) Establish Sale and Bidding Procedures; and (B) Schedule a Sale Approval Hearing* was served via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

- Robert D. Barr, Esq. on behalf of Interested Party Richard Yisha at rbarr@dsb-law.com;

- Richard A. Baumgart, Esq. on behalf of Interested Party Richard Yisha at rbaumgart@dsb-law.com;

- Kirk B. Burkley, Esq. on behalf of Creditors Roll With It, Ltd., Roll and Save, LLC, Tobacco 4 Less, LLC, and Village Tobacco LLC at kburkley@bernsteinlaw.com;

- Matthew R. Duncan, Esq. on behalf of Debtor Freedom Filler, LLC at mduncan@bdblaw.com;

- Lauren A. Helbling, Trustee at lauren@helblinglpa.com;

- Matthew H. Matheney, Esq. on behalf of Debtor Freedom Filler, LLC at mmatheney@bdblaw.com;

- Scott A. Norcross, Esq. on behalf of Creditor Roll-It-Up Tabacco Company LLC at norcross@zieglermetzger.com;

- James K. Roosa, Esq. on behalf of Creditor RYO Tasteful Tobacco Inc. at jkr@roosalaw.com;

- Christopher B. Wick, Esq. on behalf of Creditors Roll With It, Ltd., Roll and Save, LLC, Tobacco 4 Less, LLC, and Village Tobacco LLC at cwick@hahnlaw.com;

- Daniel C. Wolters, Esq. on behalf of Creditor Smoke Smart LLC at dwolters@cavitch.com;

- David Kozlowski, Esq. on behalf of the U.S. Trustee at (Registered address)@usdoj.gov; and

- Monique Donald, Esq. on behalf of the U.S. Trustee at (Registered address)@usdoj.gov.

/s/ *Patricia B. Fugée*
Patricia B. Fugée (0070698)
Roetzel & Andress, LPA
One SeaGate, Suite 1700
Toledo, OH 43604
Telephone: 419-254-5261
Facsimile: 419-242-0316
Email: pfugee@ralaw.com

*Counsel for Trustee Lauren A. Helbling*